UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHENZHEN OKT LIGHTING CO., LTD,

                                   Plaintiff,

                – against –                                    **OPINION & ORDER**

                                                               20 Civ. 5062 (ER)

JLC-TECH LLC,

                                   Defendant.

Ramos, D.J.:

       Shenzhen OKT Lighting Co., Ltd., a Chinese lighting company, brings this action

for declaratory judgment of patent noninfringement, patent invalidity, and patent

unenforceability against JLC-Tech LLC, a lighting company based in Massachusetts.

Docs. 1, 17.  Pending before the Court are JLC's motion to dismiss Shenzhen's First

Amended Complaint ("FAC") for lack of personal jurisdiction and improper venue, and

Shenzhen's counter-motion for leave to file a Second Amended Complaint ("SAC").

Docs. 28, 33.  For the reasons set forth below, JLC's motion to dismiss is GRANTED,

and Shenzhen's counter-motion for leave to file an amended complaint is DENIED.

I.       **FACTUAL AND PROCEDURAL BACKGROUND**

       **A.  Facts Alleged in Shenzhen's First Amended Complaint**

       The following facts are taken from the FAC and construed in the light most

favorable to Shenzhen.

       The instant action arises from a dispute between the parties over their respective

patented overhead lighting fixture products:  JLC's T-Bar LED lighting fixture and

Shenzhen's T-Grid LED lighting system.  ¶¶ 5, 9, 11, 12.[1]  Both the T-Bar and the T-Grid

are thin rectangular LED lighting fixtures that can be installed around ceiling panels in

_____

[1] Unless otherwise noted, citations to "¶ _" refer to the FAC, Doc. 17.

various configurations.  *See* Doc. 17-2.  JLC first obtained a patent for its T-Bar lighting fixture, U.S. Patent No. 8,177,385 ("the '385 Patent"), on May 15, 2012.  ¶¶ 11, 56.  The '385 Patent is the grandparent of JLC's patent at issue in the present case, U.S. Patent No. 10,508,805 ("the '805 Patent").  ¶ 4, 11. The United States Patent and Trademark Office issued JLC the '805 patent on December 17, 2019.  ¶ 4.  Shenzhen holds its own patent for its T-Grid product, U.S. Patent No. 10,125,934 ("the '934 Patent"), which was issued on November 13, 2018.  ¶ 20.

JLC is a limited liability company organized under Massachusetts law with its principal place of business in Pembroke, Massachusetts.  ¶ 2.  JLC maintains business relationships, including sales, distribution and licensing relationships, with two representatives in New York State who sell its T-Bar lighting fixture.  ¶¶ 30-32.  JLC's representatives in New York are Stan Deutsch Associates ("Deutsch"), which sells JLC's T-Bar in New York City, Long Island, Westchester, and Rockland, and Light Spec, which does business in Rochester, Buffalo, Amherst, Albany, and Syracuse.  ¶ 31.  Shenzhen, a Chinese company with its principal place of business in Shenzhen, China, ¶ 1, also has customers in New York, including Arlee Lighting Corporation, based in Inwood, New York,[2] ¶ 16.

Prior to the disruptions of the COVID-19 pandemic, both JLC and Shenzhen participated in lighting industry trade shows.  ¶¶ 9, 11-12, 14-15.  Of these, the annual LightFair International Trade Show "is the most important . . . lighting exhibition trade show in the United States, and a unique opportunity for manufacturers of architectural lighting to not only exhibit their designs but to compete and establish new customer relationships . . ."  ¶ 10.  LightFair does not have a fixed location and takes place in

---

[2] Shenzhen's FAC asserts that Arlee Lighting, located at 125 Doughty Boulevard, Inwood, NY 11096, is within the Southern District of New York.  ¶ 16.  In its opposition to Shenzhen's Motion to Amend the Complaint, JLC points out that Arlee Lighting is within the Eastern District of New York.  Doc. 37 at 10. In fact, 125 Doughty Boulevard, Inwood, NY 11096 is in Nassau County, in the Eastern District of New York.

different major cities in the United States.  *See* ¶ 9, 11, 15.  Shenzhen asserts that JLC attended three lighting industry trade shows in New York, New York from 2014 to the filing of the FAC.  In September 2014, Deutsch exhibited JLC's T-Bar lighting fixture at its showcase at the Metropolitan Pavilion in New York, New York.  ¶ 34.  From May 5 through May 7, 2015, JLC attended LightFair in New York, New York and exhibited its T-Bar lighting fixture there.  ¶ 9.  Deutsch also represented JLC at the 2015 LightFair.  ¶ 35.  In October 2018, JLC attended the Deutsch Showcase trade show in New York, New York, where it again exhibited the T-Bar lighting fixture.  ¶¶ 12, 36.

The litigation history between JLC and Shenzhen began, not in New York, but at the 2017 LightFair held in Pennsylvania.  ¶ 11.  During the 2017 LightFair, JLC sued Shenzhen in the Eastern District of Pennsylvania for patent infringement.[3]  JLC alleged that Shenzhen's then-version of the T-Grid lighting fixture—at that time known as the T-Bar Light or T-Bar Light with Lens[4]—infringed JLC's '385 patent, the grandparent of the '805 patent at issue here.  ¶¶ 11, 24.  Shortly after commencing the suit, JLC informed Shenzhen that it intended to seek a temporary restraining order to require Shenzhen to remove its allegedly infringing products from the 2017 LightFair and to cease manufacturing and selling them.  ¶ 11.  The parties settled the case after Shenzhen withdrew its product from the market.  *Id.*  Shenzhen's current T-Grid product has a different design and is covered by its '934 patent.  ¶¶ 11, 20.

LightFair 2020 was scheduled to take place in Las Vegas, Nevada.[5]  On January 14, 2020—before the COVID-19 pandemic caused the cancelation of LightFair 2020—

---

[3] *See JLC-Tech LLC and JLC-Tech IP LLC v. OKT Lighting, a/k/a Shenzhen OKT Lighting Co., Ltd. a/k/a OKT International Lighting Group, Ltd.*, Civil Action No. 2:17-cv-02043-GJP.

[4] *See* ¶¶ 11, 19; Doc. 33-7; Doc. 33-8.

[5] *See* Coronavirus (COVID-19) Updates and Resources, *https://www.lightfair.com/coronavirus-updates-and-resources*.  While the planned location of the 2020 LightFair is not included in the FAC or in any of the parties' papers, the Court may "take judicial notice of information contained on websites where the authenticity of the site has not been questioned."  *Fernandez v. Zoni Language Centers., Inc.*, No. 15 Civ. 6066 (PKC), 2016 WL 2903274, at *3 (S.D.N.Y. May 18, 2016), *aff'd* 858 F.3d 45 (2d Cir. 2017) (citing

JLC sent a cease and desist letter to Shenzhen customer Arlee Lighting in New York.  ¶¶ 14, 16.  JLC's letter accused Arlee Lighting of infringing JLC's '805 patent, issued just weeks before, on December 17, 2019, through its sales of Shenzhen's T-Grid lighting fixture.  ¶¶ 4, 16-19.  JLC's letter stated that "JLC-Tech will, if necessary, enforce its intellectual property rights," and pointed to its 2017 suit against Shenzhen.  Doc. 17-2 at 3.  JLC's letter gave Arlee Lighting two weeks to contact JLC about an "agreement to remedy this possible infringement."  *Id.*  JLC's letter did not acknowledge that a different patent—not the '805 patent—was at issue in the Eastern District of Pennsylvania suit, nor that the T-Grid's design had since changed and was covered by its own patent.  The FAC is silent as to Arlee Lighting's response, if any.

On May 12, 2020, JLC sued another Shenzhen customer, North American Lighting, LLC ("North American") in the District of Maryland for patent infringement of the '805 patent, alleging that Shenzhen's T-Grid product and North American's counterpart product, known as "Mister T," infringe the '805 patent.  ¶¶ 41-43.  The District of Maryland case is currently stayed under the customer suit exception, pending the outcome of the instant action.  Doc. 33-1 ¶ 90.  Shenzhen alleges that JLC's threats of litigation to enforce the '805 patent, combined with the actual litigation commenced against Shenzhen in the Eastern District of Pennsylvania in 2017 and against North American in the District of Maryland, evince "threats . . . likely to harm [Shenzhen]'s ability to sell its T-Grid [in New York], and to harm [Shenzhen]'s relationships with valued customers here, including but not limited to Arlee Lighting Corporation[.]"  ¶ 44.  Shenzhen further alleges that, because of the months of preparation required for participation in LightFair and the importance of industry trade shows, JLC's threats to Shenzhen and its customers not only injure Shenzhen by harming its competitive position in the market but also by wasting Shenzhen's time, expense, and effort put into preparing

---

*Hotel Employees & Rest. Employees Union, Local 100 of New York, N.Y. & Vicinity, AFL CIO v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 549 (2d Cir. 2002)).

for LightFair and similar tradeshows.  ¶ 21.  Shenzhen alleges that, because of JLC's cease and desist letter, it is likely that Arlee Lighting will decline to exhibit its T-Grid at the 2021 LightFair.  ¶ 45.

The 2021 LightFair was postponed from May 2021 to October 2021 due to the COVID-19 pandemic.  *See* ¶ 15; Doc. 17-5; Doc. 50.  It is scheduled to be held in person at the Javits Center in New York, New York, from October 27 to October 29, 2021.  Doc. 50.

### B.  Procedural History

Shenzhen filed the instant suit on July 1, 2020, seeking declaratory judgment of non-infringement of the '805 patent.  Doc. 1.  Shenzhen also sought declaratory judgment of invalidity and unenforceability of the '805 patent.  *Id.*  On August 5, 2020, Shenzhen filed its FAC.  Doc. 17.  On August 11, 2020, Shenzhen filed a proposed Second Amended Complaint ("SAC") without first seeking either the Court's leave or JLC's consent.  Doc. 20; *see* Fed. R. Civ. P. 15(a)(2).[6]  The proposed SAC sought to add a claim for declaratory judgment of no copyright infringement.  Docs. 20, 21.  On August 19, 2020, after the parties met and conferred, JLC informed the Court that it opposed Shenzhen's request to file the SAC, arguing that the Court lacks personal jurisdiction over JLC and that venue is improper in this district.  Doc. 23.  On September 1, 2020, JLC moved to dismiss the FAC under Fed. R. Civ. P. 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.  Doc. 28.  On September 29, 2020, Shenzhen moved for leave to file its proposed SAC and attached a new version of the proposed SAC.  Doc. 33.

---

[6] The same day, Shenzhen re-filed its proposed Second Amended Complaint along with a letter-motion requesting a pre-motion conference for leave to file its motion to amend, in accordance with the Court's Individual Rules.  Doc. 21.

### C.  Shenzhen's Proposed Second Amended Complaint

The proposed SAC re-alleges and adds new detail in support of Shenzhen's claims for declaratory judgment for non-infringement, invalidity, and unenforceability of the '805 patent.  Doc. 33-1 ¶¶ 112-130.  The proposed SAC also adds two new claims for relief, for declaratory judgment of no copyright infringement and no violation of Section 43(a) of the Lanham Act.  *Id.* ¶¶ 5, 131-145.

In the proposed SAC, Shenzhen alleges that JLC has a pattern of aggressive enforcement of its patents and copyrights against Shenzhen and its customers, especially in connection with LightFair and other trade shows.  *Id.* ¶ 81.  Shenzhen alleges that in 2017, at the same time JLC asserted claims for alleged infringement of the '385 patent in Pennsylvania, it also asserted claims for copyright infringement against Shenzhen.  *Id.* ¶ 39.  Then, following its voluntary dismissal of the Eastern District of Pennsylvania action, JLC sent a copyright infringement letter in September 2017 to Shenzhen in China, and to Shenzhen customer Big Shine World, Inc., based in Newburgh, New York.  *Id.* ¶¶ 40-44.  JLC's letter claimed that Big Shine's SIRIUS T-Bar light product showed "a strikingly similar design and manufacture" to the allegedly infringing light product[7] that Shenzhen had agreed to remove from the market following the 2017 settlement between the parties.  Doc. 33-7 at 5; Doc. 33-8 at 6.  JLC's letter also claimed that Big Shine's promotional materials for the product infringed upon JLC's images protected under copyrights VA 2-033-941 and VA 2-032-918, and that JLC believed "Big Shine may have obtained JLC-Tech's copyrighted images by working with [Shenzhen] to promote the SIRIUS T-Bar light."  Doc. 33-7 at 5; *see also* Doc. 33-8.  JLC's letter to Shenzhen further asserted that Shenzhen's association with Big Shine, and any sales or promotional materials by Big Shine of the allegedly infringing lighting product, violated the terms of the 2017

---

[7] JLC's letters to Shenzhen and Big Shine identify Shenzhen's allegedly infringing product as the "LED T-Bar Light with Lens."  Doc. 33-7 at 5; Doc. 33-8 at 6.  However, the FAC identifies Shenzhen's 2017 product as both the "2017 version of OKT's T-Bar lights" and as "the 2017 T-Grid version."  ¶ 11; *see also* Doc. 33-1 ¶ 12.

settlement agreement.  Doc. 33-7 at 5.  Shenzhen's proposed SAC alleges that, due to

JLC's threats, Big Shine ended its relationship with Shenzhen and no longer carries its

current, non-infringing lighting products.  Doc. 33-1 ¶ 46.

Likewise, JLC's communications with Shenzhen's customer Arlee Lighting cited

its 2017 action against Shenzhen as an example of its enforcement of its intellectual

property rights.  The proposed SAC identifies two letters sent by JLC to Arlee Lighting:

the first sent May 14, 2019, accusing Arlee Lighting of false advertising under Section

43(a) of the Lanham Act and unfair competition, and the second sent January 14, 2020,

claiming patent infringement.  *Id.* ¶ 54; Doc. 33-3; Doc. 33-9.  Together with the May

2019 letter, JLC attached a draft complaint for unfair competition and false advertising

sounding in copyright, captioned for the United States District Court for the Eastern

District of New York.  *See* Doc. 33-9.  The draft complaint, which was not filed, asserted

that the lighting products shown in Arlee Lighting's promotional materials were not the

Shenzhen T-Grid but rather JLC's T-Bar product.  *Id.* at 3, 11-13.  In its proposed SAC,

Shenzhen denies that either its promotional materials or those of Arlee Lighting copy

JLC's copyrighted works and denies that they contain false or misleading representations.

Doc. 33-1 ¶ 65.  Rather, since both the T-Bar and T-Grid lights are "elongated T-

structures designed to be installed individually and/or adjoining in perpendicular or in-

line orientations on office ceilings that have square or rectangular panels," it is inevitable

that there would be some similarity in promotional images for their respective lighting

products.  *Id.* ¶ 69.

Shenzhen alleges that JLC's May 2019 letter dissuaded Arlee Lighting from

participating in the 2019 LightFair.  *Id.* ¶ 61.  Then, on May 21, 2019, during LightFair,

JLC asserted that Shenzhen's display booth infringed its copyright and violated JLC's

copyright VA 2-137-214.  Shenzhen agreed to an accommodation and removed the

images in question from its display.  *Id.* ¶¶ 62, 74.[8]  Shenzhen alleges that JLC has now interfered with its business by directing threats of patent and copyright infringement toward at least six Shenzhen customers, including Arlee, Big Shine, and GM Lighting, based in Illinois.  *Id.* ¶¶ 80-81.

## II.   LEGAL STANDARD

### A.  Motion to Dismiss Under Rule 12(b)(2)

"A plaintiff opposing a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction has the burden of establishing that the court has jurisdiction over the defendant."  *BHC Interim Funding, LP v. Bracewell & Patterson, LLP*, No. 02 Civ. 4695 (LTS) (HBP), 2003 WL 21467544, at *1 (S.D.N.Y. June 25, 2003) (citing *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999)).  To meet this burden where there has been no discovery or evidentiary hearing, the plaintiff must plead facts sufficient for a *prima facie* showing of jurisdiction.  *Id.*; *see also Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 167–68 (2d Cir. 2015).  As the Court evaluates a Rule 12(b)(2) motion, it must construe all of the plaintiff's allegations as true and resolve all doubts in its favor.  *Casville Invs., Ltd. v. Kates*, No. 12 Civ. 6968 (RA), 2013 WL 3465816, at *3 (S.D.N.Y. July 8, 2013) (citing *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)).  "However, a plaintiff may not rely on conclusory statements without any supporting facts, as such allegations would 'lack the factual specificity necessary to confer jurisdiction.'"  *Art Assure Ltd., LLC v. Artmentum GmbH*, No. 14 Civ. 3756 (LGS), 2014 WL 5757545, at *2 (S.D.N.Y. Nov. 4, 2014) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)).  As Rule 12(b)(2) motions are "inherently [] matter[s] requiring the resolution of factual issues outside of the pleadings," courts may rely on additional materials outside the pleadings when ruling on such motions.  *John Hancock Prop. & Cas. Ins. Co. v. Universale Reinsurance Co.*, No. 91

---

[8] The proposed SAC does not specify the location of the 2019 LightFair.

Civ. 3644 (CES), 1992 WL 26765, at *1 n.1 (S.D.N.Y. Feb. 5, 1992); *accord Darby Trading Inc. v. Shell Int'l Trading and Shipping Co.*, 568 F. Supp. 2d 329, 334 (S.D.N.Y. 2008).

In litigation arising under a federal statute that does not contain its own jurisdictional provision, a court engages in a two-step inquiry to determine whether it has personal jurisdiction over a foreign defendant.  *See Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014); *Penguin Group (USA) Inc. v. American Buddha*, 609 F.3d 30, 35 (2d Cir. 2010).  First, a court must "determine whether the defendant is subject to jurisdiction under the law of the forum state—here, New York."  *Sonera Holding*, 750 F.3d at 224.  Second, if the law of the forum state permits personal jurisdiction, a court must "analyze whether personal jurisdiction comports with due process protections established under the Constitution."  *Eades*, 799 F.3d at 168.

### B.  Motion to Dismiss Under Rule 12(b)(3)

"The legal standard for a motion to dismiss for improper venue is the same as a motion to dismiss for lack of personal jurisdiction."  *Casville Invs.*, 2013 WL 3465816, at *3 (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 355 (2d Cir. 2005)).  "When a defendant challenges either the jurisdiction or venue of the court, the plaintiff bears the burden of showing that both are proper."  *Id.* (citing *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).  To meet this burden, the plaintiff must plead facts sufficient for a prima facie showing of jurisdiction or venue.  *Glasbrenner*, 417 F.3d at 355.

A Rule 12(b)(3) motion allows "dismissal only when venue is 'wrong' or 'improper.'  Whether venue is 'wrong' or 'improper' depends exclusively on whether the court in which the case was brought satisfies the requirements of federal venue laws."  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  In the absence of a more specific statute regarding venue, whether venue is "improper" is governed by 28 U.S.C. § 1391.  *Id.*  Venue is proper in the chosen forum if:  (1) at least

one defendant resides in the district and all the defendants reside in the same state in which the district is located; (2) a "substantial part" of the events giving rise to the claim occurred in the district; or (3) a defendant is subject to personal jurisdiction in the district and "there is no district in which an action may otherwise be brought."  28 U.S.C. § 1391(b).

### C.  Leave to Amend

"Once the time for amending pleadings as a matter of course expires, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *Tolliver v. Lilley*, No. 12 Civ. 971 (DAB) (KNF), 2016 WL 5793998, at *2 (S.D.N.Y. Sept. 19, 2016) (quoting Fed. R. Civ. P. 15(a)(2)).  The Court "should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), and leave to amend may be denied only when "there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility."  *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  This is a permissive standard since there is a "strong preference for resolving disputes on the merits."  *See Williams v. Citigroup Inc.,* 659 F.3d 208, 212-13 (2d Cir. 2011) (quoting *New York v. Green,* 420 F.3d 99, 104 (2d Cir. 2005) (internal quotation marks omitted)).  Leave to amend may be denied as futile when a plaintiff "identifies no new facts that would cure the [previous complaint's] deficiencies."  *Jackson v. Wells Fargo Home Mortg.*, 811 F.App'x 27, 30 (2d Cir. 2020), *cert denied*, 141 S. Ct. 1381, 209 L. Ed. 2d 125 (2021), *reh'g denied*, No. 20-820, 2021 WL 1602749 (U.S. Apr. 26, 2021).

## III.   DISCUSSION

### A.  Personal Jurisdiction

#### *1.  Jurisdiction Under New York Law*

"There are two types of personal jurisdiction: specific and general."  *Sonera Holding*, 750 F.3d at 225.  "General, all-purpose jurisdiction permits a court to hear 'any

and all claims' against an entity.  Specific jurisdiction, on the other hand, permits adjudi-catory authority only over issues that aris[e] out of or relat[e] to the [entity's] contacts with the forum.'"  *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (quoting *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 134 (2d Cir. 2014)).

Where "the complaint involves issues of patent infringement and validity," courts apply Federal Circuit law to the question of jurisdiction.  *New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1037 (Fed. Cir. 2017); *see also Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1352 (Fed. Cir. 2017).  As to the first step of the personal jurisdiction analysis, the application of New York's long-arm statute, the Federal Circuit "defer[s] to the interpretations of the relevant state and federal courts, in-cluding their determinations regarding whether or not such statutes are intended to reach to the limit of federal due process."  *Graphic Controls Corp. v. Utah Med. Prod., Inc.*, 149 F.3d 1382, 1386 (Fed. Cir. 1998) (citations omitted).  As to the second step, Federal Circuit law applies to the question of whether the assertion of personal jurisdiction com-plies with due process.  *Id.* at 1385–86.  ("With regard to the federal constitutional due process analysis of the defendant's contacts with the forum state in patent cases, we do not defer to the interpretations of other federal and state courts.") (citations omitted).

Under New York law, courts exercise general jurisdiction in accordance with New York Civil Practice Law and Rules ("C.P.L.R.") § 301 and specific jurisdiction in accordance with C.P.L.R. § 302(a).  While neither Shenzhen nor JLC has briefed the ap-plication of C.P.L.R. §§ 301 and 302(a) to JLC's contacts with New York, JLC argues, based on Federal Circuit law, that its contacts with New York are insufficient to subject either to general or specific jurisdiction here.  Doc. 28-1 at 6-9.  Shenzhen argues that its FAC has sufficiently pleaded that the Court has specific jurisdiction based on JLC's con-tacts and activities in New York, particularly attendance at the three lighting trade shows, Doc. 29 at 7-8, and furthermore that "[i]n view of JLC's long-term business relationship in the forum, Shenzhen has set forth a *prima facie* case of general jurisdiction."  *Id.* at 12.

Yet, in its counter-motion to amend the complaint, Shenzhen writes that it is willing to waive the issue of general jurisdiction if the Court grants its motion for leave to amend in order "[t]o narrow the issues and conserve judicial resources[.]"  Doc. 34 at 25.

Given that Shenzhen apparently waives the issue of general jurisdiction in connection with its proposed SAC, the Court need not analyze this issue in detail.  The application of C.P.L.R. § 301 supports JLC's position that its contacts "are simply too minimal" to support general jurisdiction over it in New York.  Doc. 28-1 at 9.  In neither the FAC nor the proposed SAC has Shenzhen pleaded that JLC engages in "continuous and systematic" business activities in New York.  *See Arquest, Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 07 Civ. 11202 (CM), 2008 WL 2971775, at *5 (S.D.N.Y. July 31, 2008), *dismissed,* 316 F. App'x 990 (Fed. Cir. 2008) (citing *Beacon Enters., Inc. v. Menzies,* 715 F.2d 757, 762 (2d Cir.1983)).  *See also Helicopteros Nacionales de Colom., S.A. v. Hall,* 466 U.S. 408, 415-16 (1984).  JLC is a limited liability corporation organized under Massachusetts law, with its only office in Pembroke, Massachusetts.  Doc. 28-2 ¶¶ 5, 10.  JLC does not own or lease any property in New York, does not maintain any offices in New York, has no members in New York, and does not employ any New York residents.  *Id.* ¶¶ 9, 12-14.  Thus, JLC does not meet any of the factors the Second Circuit has identified in "the pragmatic test for section 301 jurisdiction," including "the existence of an office in New York; the solicitation of business in the state; the presence of bank accounts and other property in the state; and the presence of employees of the foreign defendant in the state."  *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 58 (2d Cir. 1985) (citations omitted).  Shenzhen's only argument in support of general jurisdiction is that JLC has "long-term continuing business relationships, including sales, distribution and licensing relationships" with at least two New York businesses regarding the T-Bar light.  ¶¶ 30-34; *see also* Doc. 37 at 11.  This assertion is insufficient to support general personal jurisdiction over JLC in New York.

Nor does the Court have specific jurisdiction over JLC under C.P.L.R. § 302(a).[9] The Federal Circuit recognizes that New York Courts and the Second Circuit "have held that the New York long-arm statute, and specifically section 302(a)(1), does not extend to the limit of federal due process." *Graphic Controls Corp.*, 149 F. 3d at 1386 (citations omitted). Section 302(a)(1) provides "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" *Poof-Slinky, LLC v. A.S. Plastic Toys Co*., No. 19 Civ. 9399 (ER), 2020 WL 5350537, at *3 (S.D.N.Y. Sept. 4, 2020). "To determine whether there is a basis for personal jurisdiction under § 302(a)(1), courts evaluate 'the totality of the defendant's activity within the forum' and whether 'there is an articulable nexus, or a substantial relationship, between the claim asserted and the actions that occurred in New York.'" *Id.* (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir. 2007)). Thus, section 302(a)(1) sets forth a two-part test: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL (Licci IV)*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Solé Resort, S.A. de C.V. v. Allure Resorts Management, LLC*, 450 F.3d 100, 103 (2d Cir. 2006)).

Section 302(a)'s requirement that the claim "arise from" business transactions, real property ownership, or torts committed within or directed at New York does not require a direct causal link but rather "a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former[.]" *Licci IV*, 732 F.3d at 168 (quoting *Licci v. Lebanese Canadian Bank*, 20 N.Y.3d 327, 339 (2012)). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though

---

[9] The parties have not briefed the application of C.P.L.R. §§ 301 or 302(a) to personal jurisdiction over JLC, instead relying on Federal Circuit law. Because Shenzhen's FAC and proposed SAC focus on JLC's transaction of business in, and revenue from, New York, the Court will only consider the application of C.P.L.R. § 302(a)(1). Shenzhen does not allege any tortious actions by JLC, and thus C.P.L.R. §§302(a)(2) and 302(a)(3) do not apply here. Neither party argues that JLC owns, uses, or possesses any real property in New York, and thus C.P.L.R. § 302(a)(4) does not apply. *See* Doc. 28-2.

the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) (quoting *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (1988)).  "Purposeful activities are those with which a defendant, through volitional acts, avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Eades*, 799 F.3d at 168 (quoting *Fischbarg v. Doucet,* 880 N.E.2d 22, 26 (2007)).  Specifically, a plaintiff must show the cause of action is "sufficiently related to the business transacted that it would not be unfair to deem it to arise out of the transacted business, and to subject the defendants to suit in New York." *Hoffritz*, 763 F.2d at 59 (citations omitted).

Considering JLC's attendance at industry trade shows in New York and sales of its products through Deutsch and Light Spec, Shenzhen has shown that JLC transacts business in New York, as required by C.P.L.R. § 302(a)(1).  However, Shenzhen has not sufficiently pleaded that its action for declaratory judgment arises from JLC's contacts in New York.  Shenzhen's FAC alleges that JLC's New York contacts consist of attendance and participation at three lighting trade shows, ¶¶ 9, 12, 34-35, sales, distribution, and licensing relationships with two New York distributors dating back to at least 2014, ¶¶ 30-37, unspecified sales and commercial success of its lighting products, ¶¶ 26, 27, and one cease and desist letter directed to Shenzhen's customer Arlee Lighting, ¶¶ 16-19, 24-25, 41.  Shenzhen further argues that JLC's commercial success, including in New York, allowed it to obtain issuance of the '805 patent.  ¶¶ 26-29; *see also* Doc. 29 at 10-11.  But the FAC does not allege that the instant action arises out of these contacts; rather, it arises out of JLC's threat of patent enforcement against Arlee Lighting and the "the direct impact JLC's threat potentially has upon [Shenzhen's] relationships with Arlee and other customers in New York" and "the direct impact JLC's threat potentially has on the ability of [Shenzhen] and its customers including Arlee to exhibit T-Grid at trade shows in this

14

district[.]"  ¶ 24.  However, courts in this Circuit have repeatedly held that sending a
cease and desist letter is insufficient to invoke jurisdiction under C.P.L.R. § 302(a)(1).
*Beacon Enters.*, 715 F.2d at 766; *Fort Knox Music, Inc. v. Baptiste*, 139 F. Supp. 2d 505,
511 (S.D.N.Y. 2001) ("The Second Circuit has been clear that a cease and desist letter
alone is insufficient to confer jurisdiction under section 302(a)(1).  Rather, it is essential
in each case that there be some act by which the defendant purposefully avails himself of
the privilege of conducting activities in the forum.") (internal quotation marks and cita-
tions omitted); *cf. Scholastic, Inc. v. Stouffer*, No. 99 Civ. 11480 (AGS), 2000 WL
1154252, at *7 (S.D.N.Y. Aug. 14, 2000) (finding that defendant's cease and desist let-
ters were insufficient to confer jurisdiction, but that plaintiff had sufficiently pleaded that
defendant transacted business in New York through an agent, and action was sufficiently
related to that transaction of business).  The letter directed to Arlee Lighting aside, Shen-
zhen's present action for declaratory judgment of patent non-infringement cannot be said
to *arise from* JLC's relationships with distributors in New York, unspecified sales or
commercial success in New York, or participation at trade shows in New York, without
more.  The prior litigation between Shenzhen and JLC alleging infringement of a differ-
ent patent arose from the 2017 LightFair in Pennsylvania, ¶ 19, and has no bearing on
whether personal jurisdiction over JLC exists in New York.

Thus, Shenzhen has not sufficiently alleged personal jurisdiction in accordance
with New York's long-arm statute.

### 2.  Due Process Protections

Even assuming Shenzhen had sufficiently pleaded facts showing that JLC has
transacted business in New York and the present cases arises out of those transactions, it
has not met the second prong of the analysis for personal jurisdiction.  Here, Federal Cir-
cuit law controls.  Under Federal Circuit law, the question of whether personal jurisdic-
tion comports with due process turns on three factors:  "(1) whether the defendant

'purposefully directed' its activities at residents of the forum; (2) whether the claim 'arises out of or relates to' the defendant's activities with the forum; and (3) whether assertion of personal jurisdiction is 'reasonable and fair.'" *Xilinx*, 848 F.3d at 1353 (quoting *Inamed Corp. v. Kuzmak*, 249 F.3d 1356, 1360 (Fed. Cir. 2001)). "The first two factors correspond with the 'minimum contacts' prong of the [*International Shoe Co. v. Washington*, 326 U.S. 310 (1945)] analysis, and the third factor corresponds with the 'fair play and substantial justice' prong of the analysis." *Id.* (quoting *Inamed*, 249 F.3d at 1360).

"[T]he nature of the claim in a declaratory judgment action is 'to clear the air of infringement charges.'" *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008) (quoting *Red Wing Shoe Co., Inc. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360 (Fed. Cir. 1998)).  In *Avocent*, the Federal Circuit stated that claims for declaratory judgment "neither directly arise[] out of nor relate[] to the making, using, offering to sell, selling, or importing of arguably infringing products in the forum," but instead out of "the activities of the defendant patentee in enforcing the patent or patents in suit."  552 F.3d at 1332.  Therefore, "[t]he relevant inquiry for specific personal jurisdiction purposes then becomes to what extent has the defendant patentee 'purposefully directed [such enforcement activities] at residents of the forum,' and the extent to which the declaratory judgment claim 'arises out of or relates to those activities.'" *Id.* (quoting *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006)).  As the Federal Circuit has stated, because of the nature of claims for declaratory judgment, "[t]his inquiry necessarily places greater focus in a declaratory judgment action on the differences, if any, in the meaning of the 'arises out of' and 'relates to' inquiries for personal jurisdiction." *Id.* at 1333.

The Federal Circuit has repeatedly held that an "infringement letter" sent by the defendant patentee to the forum is insufficient to meet the first two factors of the test for personal jurisdiction. *See, e.g.*, *Avocent*, 552 F.3d at 1333; *Red Wing Shoe*, 148 F.3d at

1359–61; *Silent Drive, Inc. v. Strong Industries, Inc.*, 326 F.3d 1194, 1202 (Fed. Cir. 2003). In *Avocent*, the Federal Circuit reasoned that, while infringement letters sent into a forum "might be expected to support an assertion of specific jurisdiction over the patentee because the letters are purposefully directed at the forum and the declaratory judgment action arises out of' the letters," in fact "letters threatening suit for patent infringement sent to the alleged infringer *by themselves* do not suffice to create personal jurisdiction," based on policy considerations unique to the patent context. 552 F.3d at 1333 (internal quotation marks and citations omitted). The Federal Circuit recently affirmed this principle, noting that "merely sending notice letters of patent infringement does not satisfy the fair play and substantial justice prong of the personal jurisdiction inquiry, because principles of fair play afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum." *Maxchief Invs. Ltd. v. Wok & Pan, Ind., Inc.*, 909 F.3d 1134, 1139 (Fed Cir. 2018) (internal quotation marks and citations omitted). Thus, JLC is correct that the infringement letter sent to Arlee Lighting in January 2020 is insufficient to establish that JLC purposely directed its activities at New York, or that the instant case arises out of JLC's activities in New York. Doc. 28-1 at 6-7.

However, "other activities" beyond an infringement letter, that "relate to" enforcement of patents in the forum state, may support personal jurisdiction in the forum. *See Avocent,* 552 F.3d at 1334; *Breckenridge*, 444 F.3d at 1363-67 (collecting cases on the application of personal jurisdiction in actions for declaratory judgment). In *Breckenridge*, the Federal Circuit summarized its prior cases regarding personal jurisdiction in declaratory judgment actions as follows:

> Thus, the crux of the due process inquiry should focus first on whether the defendant has had contact with parties in the forum state beyond the sending of cease and desist letters or mere attempts to license the patent at issue there. Where a defendant-licensor has a relationship with an exclusive licensee headquartered or doing business in the forum state, the inquiry requires close

> examination of the license agreement.  In particular, our case law requires that the license agreement contemplate a relationship beyond royalty or cross-licensing payment, such as granting both parties the right to litigate infringement cases or granting the licensor the right to exercise control over the licensee's sales or marketing activities.

444 F.3d at 1366.  Furthermore, as JLC states, Doc. 28-1 at 7, the "other activities" beyond the sending of patent infringement letters must relate to enforcement or defense of the patent.  *Avocent*, 552 F.3d at 1336.

Here, the sole activity Shenzhen alleges in the FAC relating to the enforcement or defense of the '805 patent and occurring in New York is the January 2020 infringement letter sent to Arlee Lighting.  In its opposition, Shenzhen concedes that the sending of a patent infringement letter is insufficient to establish jurisdiction, Doc. 29 at 6, but argues that it has sufficiently shown "other activities" relating to patent enforcement, including JLC's attendance at New York trade shows in 2014, 2015, and 2018, *id.* at 7-8.  In its opposition, Shenzhen asserts, without having pleaded as much in the FAC, that JLC "uses trade shows as a means to investigate / identify potential infringements, as JLC's January 2020 letter to Arlee itself indicates in focusing on LightFair." *Id.* at 8.  Shenzhen also argues that JLC's attendance at the three New York shows is relevant because the '805 patent at issue is in the same family as JLC's '385 patent in existence at the time JLC attended those trade shows.  *Id.* at 7-8.  Shenzhen cites *Activevideo Networks, Inc. v. Trans Video Elecs., Ltd.,* 975 F. Supp. 2d 1083 (N.D. Cal 2013), in which the district court found that personal jurisdiction did exist in an action for declaratory judgment.  However, *Activevideo* is not binding on this Court, and moreover is clearly distinguishable from the facts here.  The *Activevideo* court found that the defendant was subject to personal jurisdiction in California where it had initiated six patent enforcement cases in the Northern District of California and entered into at least two licensing agreements resulting from patent infringement suits brought against the relevant companies.  975 F. Supp. 2d at 1097-1098.  In its FAC, Shenzhen does not allege that JLC has engaged in judicial patent enforcement in this district or availed itself of New York courts.  Regardless of the

relatedness of the patents of the '385 and '805 patents, the mere fact that the '385 patent was in existence at the time JLC attended trade shows in 2014, 2015, and 2018 does not mean that this action arises out of any dispute over that patent.

Furthermore, in making the argument that attendance at trade shows suffices to establish jurisdiction, Shenzhen relies on two cases, *Sudden Valley Supply LLC v. Ziegmann,* No. 4:13CV53 JCH, 2013 WL 2099440, at *4 (E.D. Mo. May 14, 2013) (finding that the court had specific personal jurisdiction over defendant where defendant had attended industry conventions in Missouri, discussed the validity of his patent with plaintiff and conference attendees, sold and delivered his products in Missouri, and sent an infringement letter to plaintiff in Missouri), and *Bravo Co. USA v. Badger Ordnance LLC,* No. 2:14-CV-00387-RCJ, 2015 WL 1326420, at *5 (D. Nev. Mar. 25, 2015) (finding that the court exercised personal jurisdiction over defendant who regularly attended an annual industry show in Nevada, had an attorney based in Nevada, and was personally served in Nevada).  While the facts of *Sudden Valley* are similar to the facts here, the decision is not binding on this Court, and the Court declines to adopt the reasoning of the *Sudden Valley* court.  *Bravo Company* is distinguishable, as Shenzhen does not contend either that JLC has a New York-based attorney or that JLC was personally served in New York. Shenzhen has not pleaded that JLC undertook to enforce or defend the '805 or any related patent at any of the three New York trade shows it attended, and thus attendance at the trade shows without more does not constitute "other activities" supporting the exercise of personal jurisdiction under Federal Circuit law.

Shenzhen's further arguments about "other activities" by JLC supporting the exercise of personal jurisdiction also fail.  Shenzhen states that, since JLC's motion to dismiss did not address its business or licensing relationships with Deutsch and Light Spec alleged in the FAC, the Court should simply infer that these representatives are "geographically exclusive licensees" with "certain enforcement obligations."  Doc. 29 at 9.  This is unsupported attorney argument, as Shenzhen has not pleaded that Deutsch and Light

Spec hold exclusive licensing agreements that include enforcement provisions.  *See Breckenridge,* 444 F.3d at 1366.  Shenzhen also argues that JLC's Motion to Dismiss did not deny that it benefits from sales in New York, and thus the Court should assume relevant sales in New York and should infer based on JLC's successful application for the '805 patent, "that market considerations and competitors' products were part of a presentation on commercial success, which in turn gained in substantial measure from JLC's New York commercial activity." Doc. 29 at 10-11.  The mere fact that JLC's moving papers did not contest Shenzhen's speculations about its sales and commercial success in New York is insufficient to establish activities by JLC in New York to support the exercise of personal jurisdiction.

The Court finds that Shenzhen has not established that its claims arise out of JLC's activities purposefully directed at New York and therefore has not established personal jurisdiction over JLC.  As to the third factor, whether the assertion of personal jurisdiction is reasonable and fair, the Court finds that it is not here, especially since the parties are engaged in active litigation in another district, in the District of Maryland.  ¶ 42; Doc. 28-1 at 10.

For these reasons, the Court finds that personal jurisdiction over JLC does not exist in New York, and Shenzhen's FAC must be dismissed pursuant to Rule 12(b)(2).

## B.  Venue

JLC contends that because the Court does not exercise personal jurisdiction over JLC, venue is also improper.  The Court agrees.

Venue is improper under 28 U.S.C. § 1391(b)(1) as JLC does not reside in this district, or indeed in New York state.  Residency for venue purposes is determined in accordance with 28 U.S.C. § 1391(c)(2), which provides that "an entity . . . shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]"

Since JLC is not subject to personal jurisdiction in New York, venue is not proper. Furthermore, venue is improper under 28 U.S.C. § 1391(b)(2) as the only event Shenzhen has alleged giving rise to the claim is Arlee Lighting's receipt of JLC's patent infringement letter.  As discussed above, Arlee Lighting is located in the Eastern District of New York, not in this district.  Finally, venue is improper under 28 U.S.C. § 1391(b)(3) as JLC and Shenzhen have a history of litigation in at least two other judicial districts, the Eastern District of Pennsylvania and the District of Maryland.  ¶¶ 11, 40, 42; Doc. 28-1 at 10.  In its opposition, Shenzhen requests that the Court transfer this action to an appropriate jurisdiction, should the Court find venue in this district improper, rather than dismiss the case.  Doc. 29 at 14-15.  However, in a later submission to the Court, Shenzhen writes that it prefers dismissal to transfer.  Doc. 45.  Therefore, the Court determines that Rule 12(b)(3) provides an alternate basis for dismissal and declines to consider whether transfer is appropriate.

### C.  Leave to Amend

Shenzhen moves for leave to file its proposed SAC, which adds claims for declaratory judgment of copyright noninfringement and for declaratory judgment of no violation of Section 43(a) of the Lanham Act.  Doc. 33.  The SAC also provides greater detail about JLC's history of patent and copyright enforcement actions directed at Shenzhen and its customers.  *See id.*  JLC opposes on the grounds that Shenzhen first filed its proposed SAC improperly and on the grounds of futility.  Doc. 37 at 13-16. Shenzhen argues that it should be allowed leave to amend because it has sufficiently alleged personal jurisdiction based on JLC's cease and desist letters, use of trade shows, and sales in New York, Doc. 34 at 17-22, and because the proposed SAC "sets forth a damning narrative" of a "pattern by JLC of repeatedly over-leveraging its [intellectual property] to harass and intimidate [Shenzhen's] customers," *id.* at 18.

In considering whether leave to amend would be futile, the standard is whether the proposed claim would withstand a motion to dismiss pursuant to Fed. R. Civ. P.

12(b)(6).  *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88

(2d Cir. 2002) (citing *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir. 1991)).

Following this standard, the court accepts the plaintiff's factual allegations as true and

draws all reasonable inferences in favor of the plaintiff.  *Henneberry v. Sumitomo Corp.*

*of Am.*, 415 F. Supp. 2d 423, 433 (S.D.N.Y. 2006) (citations omitted).  The party oppos-

ing the motion to amend bears the burden of establishing futility. *See, e.g., Ith-*

*aca Cap. Invs. I S.A. v. Trump Panama Hotel Mgmt. LLC,* 450 F. Supp. 3d 358, 377

(S.D.N.Y. 2020) (citations omitted).  The Second Circuit has held

that leave to amend may be denied on the basis of futility when it is "beyond doubt that

the plaintiff can prove no set of facts in support of his amended claims."  *Pangburn v.*

*Culbertson,* 200 F.3d 65, 71 (2d Cir. 1999) (internal quotation marks and citations omit-

ted).

    The trial court has broad discretion when ruling on a motion to amend, *Gurary v.*

*Winehouse,* 235 F.3d 792, 801 (2d Cir. 2000), but generally, will not deny leave to

amend based on futility unless the proposed amendment is clearly frivolous or legally in-

sufficient.  *See In re Boesky Sec. Litig.,* 882 F. Supp. 1371, 1379, (S.D.N.Y. 1995) (cita-

tions omitted).  Beyond these considerations, the court should not consider the substan-

tive merits of the plaintiff's claim on a motion to amend.  *Id.; see also Ricciuti,* 941 F.2d

at 123-24 (noting that the plaintiff is not required to prove his case at this stage).

    Despite the additional details Shenzhen included in its proposed SAC as to JLC's

copyright infringement letters sent to Shenzhen and its customers, the proposed SAC

does not substantially change its patent claims.  Shenzhen has not sufficiently alleged

facts supporting the existence of personal jurisdiction over JLC for its patent claims.

Thus, the Court denies leave to amend as to Shenzhen's patent claims.

    Shenzhen seeks to add two claims sounding in copyright, based on JLC's letters

directed at Arlee Lighting and Big Shine, another New York-based customer.  Doc. 33-1

¶¶ 131-145.  JLC opposes on the grounds of futility, arguing that the Court lacks specific

jurisdiction over JLC and that Shenzhen has not sufficiently alleged a nexus between JLC's New York contacts and Shenzhen's declaratory judgment claims.  Doc. 37 at 13-16.  JLC also argues that Shenzhen lacks standing to bring declaratory judgment claims for its customers.  *Id.* at 13-14.

As noted above, the proposed SAC would bring two new claims for declaratory judgment of no copyright infringement and no Lanham Act violation and allege new facts, including copyright cease and desist letters sent to Big Shine and Arlee Lighting, and enforcement threats directed at Shenzhen itself.  Doc. 33-1 ¶¶ 40-46, 54-55, 60-75.  Because Shenzhen has not specified the location of the 2019 LightFair where JLC threat-ened Shenzhen with a further copyright enforcement action, the Court cannot determine whether this incident bears any connection to the forum.

Since the proposed SAC does not sufficiently allege general personal jurisdiction over JLC in accordance with C.P.L.R. § 301, the question, as Shenzhen recognizes, is whether it has sufficiently alleged specific jurisdiction—that is, whether its claims for de-claratory judgment arise from JLC's transaction of business in New York.  Shenzhen has not done so.  The proposed SAC does not connect Shenzhen's claims for declaratory judgment to JLC's business relationships in New York, participation at trade shows in 2014, 2015, and 2018, or any other contacts with New York.  Doc. 37 at 15-16.  That leaves only the cease and desist letters sent to Big Shine and Arlee Lighting, and as the Court has already noted, cease and desist letters standing alone are insufficient to support personal jurisdiction.  *See Beacon Enters.,* 715 F.2d at 765 ("[Defendant's] shipments of goods into New York are irrelevant to [plaintiff's] declaratory judgment action and [plaintiff's] cause of action would exist regardless of whether [defendant's] products were sent to New York.  The present controversy arose as a result of [defendant's] 'cease and desist' letter," rather than commercial activity in New York.  "Accordingly, we find no articulable nexus[.]") (internal quotation marks and citations omitted).  The fact that JLC went so far as to send a draft complaint to Arlee Lighting, Doc. 33-9, makes this a

closer question, but there is no indication that JLC filed the complaint or ever availed itself of courts in this forum. Thus, the Court finds that Shenzhen has not sufficiently alleged that personal jurisdiction exists over JLC and denies leave to amend as futile. Because the Court finds that Shenzhen has not sufficiently alleged personal jurisdiction, it does not address JLC's standing argument. Doc. 37 at 13-14.

### D.  Jurisdictional Discovery

In the alternative, Shenzhen asks for leave to conduct jurisdictional discovery. Doc. 34 at 25.  That request is denied. The Second Circuit has held that a plaintiff who is unable to state a *prima facie* case for personal jurisdiction is not entitled to jurisdictional discovery. *Jazini*, 148 F.3d at 186. "District courts in this circuit routinely reject requests for jurisdictional discovery where a plaintiff's allegations are insufficient to make out a *prima facie* case of jurisdiction." *Stutts v. De Dietrich Group*, 465 F.Supp.2d 156, 169 (E.D.N.Y. 2006) (collecting cases). The decision of whether to allow jurisdictional discovery is left to the Court's discretion. *Best Van Lines*, 490 F.3d at 255 (citing *First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 175 (2d Cir. 1998). The Court therefore denies Shenzhen's request for jurisdictional discovery.

## IV.    CONCLUSION

For the reasons set forth above, JLC's motion to dismiss is GRANTED, and Shenzhen's cross-motion to amend is DENIED.  JLC's letter-motion for oral argument is DENIED as moot.  The Clerk of Court is respectfully directed to terminate the motions, Docs. 28, 33, and 36, and to close the case, 20 Civ. 5062 (ER).


It is SO ORDERED.


Dated:    September 28, 2021
          New York, New York

_____
                Edgardo Ramos, U.S.D.J.